**IN THE UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF TEXAS**

| | | |
|---|---|---|
| **SOCKET SOLUTIONS, LLC,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | **Civil Action No. 4:26-cv-9699** |
| **v.** | § | |
| | § | |
| **IMPORT GLOBAL, LLC; GUANGZHOU HONGZHU INFORMATION TECHNOLOGY CO., LTD. d/b/a OLCORIFE; and JOHN DOES 1–20,** | § § § § § | **JURY TRIAL DEMANDED** |
| **Defendants.** | | |

**VERIFIED ORIGINAL COMPLAINT**

Plaintiff Socket Solutions, LLC ("Socket Solutions") files this Verified Original Complaint and Application for Temporary Restraining Order and Preliminary Injunction against Defendants Import Global, LLC ("Import Global"), Guangzhou Hongzhu Information Technology Co., Ltd. d/b/a Olcorife ("Olcorife"), and John Does 1–20 (the "Doe Defendants," and, together with Import Global and Olcorife, "Defendants"), and alleges as follows. Import Global and Olcorife are referred to together as the "Seller Defendants." Unless the context requires otherwise, references to "Defendants" or "each Defendant" in connection with the Accused Products (as defined herein), Counts I and II, the Application for Temporary Restraining Order and Preliminary Injunction, and paragraphs (a) through (f) of the Prayer for Relief mean the Seller Defendants, and Count IX against Import Global only.

## I. NATURE OF THE ACTION

1. This is a false-advertising case under Section 43(a)(1)(B), 15 U.S.C. § 1125(a)(1)(B) about two dangerously unsafe electrical products sold on Amazon.com by Import

Global and Olcorife marketed as safe and in compliance with applicable safety certifications for electrical products, a false designation of origin case under Section 43(a)(1)(A) of the Lanham Act, 15 U.S.C. § 1125(a)(1)(A) against Import Global, and various counts under the Lanham Act and Texas law against Doe Defendants. Import Global and Olcorife sell an outlet-concealer extension cord with an undersized 16-gauge cord connected to a power strip that exceeds the maximum number of permitted AC outlets and USB charging ports that an electrical product can safely have, pursuant to UL Standard 817, the applicable safety standard governing these electrical products. This results in a consumer who uses most or all of the AC outlets and/or USB ports on the Import Global and Olcorife products inadvertently misusing the product by overloading it, i.e., the device draws more electrical current than it is rated to handle, thereby causing a severe safety hazard. To be sure, the warning tag UL 817 required for the Import Global and Olcorife products – which is not attached or included with such products -- states: "**Misuse Can Result in FIRE or DEATH by ELECTRICAL SHOCK.**" As a result of the design of the Import Global and Olcorife products, a consumer's use of the Import Global and Olcorife products creates a severe safety hazard that can result in fire or death by electrical shock.

2. Notwithstanding, each Seller Defendant nonetheless market their products on Amazon.com as safe. Import Global markets the Neat Socket as a "SAFETY ELECTRICAL OUTLET CONCEALER" that is suitable for "baby proofing" and is "CHILD AND PET FRIENDLY." Olcorife prints on the package and instruction leaflet of its product that "[t]he device conforms to UL1363, UL62368, and part 15 of the FCC rules," and advertises that the product will "charge 9 devices simultaneously" and provides "Surge Protection: 2000 Joules."

**3. Neither product bears the certification mark of any Nationally Recognized Testing Laboratory—the independent certification Amazon requires sellers of electrical**

**products to document—and, as designed, neither are able to be certified to UL 817.**

4. Olcorife's surge-protection claim is equally baseless: it claims conformance to UL 1363, the general standard for power strips, but not to UL 1449, the standard that governs surge protective devices and with which UL 1363 itself requires a surge-protected power strip to comply.

5. The danger is compounded by Amazon.com's recommendation of the dangerously unsafe Olcorife products to consumers via the prominent badge Amazon.com placed at the top of Olicrife's Amazon.com listings that reads, "Amazon's Choice." Given that Amazon.com requires safety certification of electrical products sold on Amazon.com (see para. 74), consumers are under the false impression that the Import Global and Olcorife products sold on Amazon.com in commerce throughout the United States are safe and comply with applicable safety standards – but they do not, and every day the listing remains live, more of these products dangerously unsafe products marketed as safe on the largest eCommerce site, Amazon.com, are installed in American homes.

6. Those representations are materially and recklessly false. They lead consumers to install dangerously unsafe electrical products in their homes, behind or close to their bed, in their children's rooms, thereby creating serious risk of "fire and of death by electrical shock" according to the applicable safety standard, UL 817. They also divert sales from Socket Solutions' competing Sleek Socket products, all of which are licensed as conforming to applicable UL standards (U.S.) and CSA standards (Canada). The Lanham Act entitles Socket Solutions to an injunction against each Defendant, each Defendant's profits, and its own damages. Because Defendants' false safety claims reach consumers every day, Socket Solutions also applies for a temporary restraining order and a preliminary injunction requiring each Defendant to stop making, importing, advertising, and selling them in commerce in the United States pending trial.

7. Because Defendants misrepresent safety compliance of their products, Amazon.com's consumers receive an unsafe product they believe to be safe, after paying for an assurance of safety that does not exist, and Plaintiff that bore the cost of compliance loses the sale, especially where the Plaintiff's product is "inferior" in the mind of the consumer because compliance means fewer outlets and USB ports than the dangerously unsafe products that Defendants market as safe.

8. This action also seeks relief against those who have attacked Socket Solutions from the opposite direction. On a regular and continuing basis, persons whose identities Socket Solutions does not yet know—named here as John Does 1–20—have submitted knowingly false safety complaints to Amazon, reporting that Sleek Socket products are unsafe—complaints Amazon has relayed to Socket Solutions as "customer reports" of "inadequate surge protection leading to fires and electrocution." The Sleek Socket products have been certified since 2018 by Intertek, a Nationally Recognized Testing Laboratory, and Socket Solutions has received no such complaints, whether directly or indirectly to its product liability insurance carrier. The false complaints have nonetheless produced a steady stream of Amazon policy-violation notices, ongoing and serial threats to delist additional Socket Solutions listings on Amazon.com, and the actual delisting of multiple Sleek Socket listings, causing Socket Solutions material financial harm. Upon information and belief, Amazon's records identify the content of such complaints, the persons who submitted those complaints, and the date of such complaints. Socket Solutions will seek leave to obtain that information from Amazon so that the Doe Defendants can be named in this lawsuit and held to account.

## II. PARTIES

9. Plaintiff Socket Solutions, LLC is a Texas limited liability company with its

principal place of business at 4849 Homestead Road, Suite 234, Houston, Texas 77028.

10. Defendant Import Global, LLC is a Florida limited liability company with its principal place of business at 5967 Brookfield Cir. W, Fort Lauderdale, FL 33312. Import Global markets and sells outlet-concealer extension cords under the name "Neat Socket" and is identified on Amazon.com as the seller of those products. Amazon's seller profile for Import Global lists its business name as "Import Global LLC" and its business address as 1728 NE Miami Gardens Drive, Suite 151, Miami, Florida 33179. Upon information and belief, Import Global is a single-member LLC without any hard assets other than its Amazon.com account.

11. Defendant Guangzhou Hongzhu Information Technology Co., Ltd. ("Hongzhu") is a limited liability company registered in Guangzhou, China with its principal place of business at No. 3, Guanyun, Yiyun Technology Innovation Center, Dayuan Street, Baiyun District, Guangzhou, Guangdong, China. Hongzhu markets and sells outlet-concealer extension cords under the brand name "Olcorife" and is identified on Amazon.com, under the seller name "olcorife," as the seller of the product described below. Amazon's seller profile for Olcorife lists its business name as "guangzhouhongzhuxinxikejiyouxiangongsi"—the romanized form of Guangzhou Hongzhu Information Technology Co., Ltd.—and alleged business address as Room 301-4582, Building 6, No. 18 Kelin Road, Tianhe District, Guangzhou, Guangdong 510000, China. 12. In order to sell through Online Marketplaces, foreign Defendants must register, establish or purchase, and maintain Online Storefronts and Seller IDs associated therewith. Upon information and belief, foreign Defendants have engaged in fraudulent conduct with respect to the registration of their Online Storefronts and Seller IDs by providing false and misleading information to the operators of the Online Marketplaces during the registration or maintenance process related to their respective Seller IDs. Upon information and belief, foreign Defendants

have anonymously registered and maintained some Seller IDs for the sole purpose of engaging in unauthorized, deceptive, and infringing activities, without regard for United States laws.

**12.** Defendants John Does 1–20 are persons and entities whose identities are presently unknown to Socket Solutions and who submitted, caused to be submitted, or conspired to submit to Amazon the false safety complaints concerning Sleek Socket products described in Section IV.J below. Upon information and belief, the Doe Defendants include sellers of competing products on Amazon.com, or persons acting on their behalf. Socket Solutions does not yet know whether any Doe Defendant is affiliated with, or acting for, either Seller Defendant. Upon information and belief, Amazon.com, Inc. maintains records—including account names, e-mail addresses, and Internet Protocol addresses—that identify the person or account that submitted each complaint. Socket Solutions will seek leave to amend this Complaint to name these Defendants when their identities are known.

## III. JURISDICTION AND VENUE

13. This Court has subject-matter jurisdiction under 15 U.S.C. § 1121(a) and 28 U.S.C. §§ 1331 and 1338(a) because this action arises under the Lanham Act, 15 U.S.C. § 1125(a).

14. This Court has supplemental jurisdiction over Counts IV through VIII under 28 U.S.C. § 1367(a) because those claims are so related to the claims within the Court's original jurisdiction, including Counts I through III, and IX, that they form part of the same case or controversy.

15. This Court has personal jurisdiction over Import Global. Import Global purposefully directs its advertising and sales to Texas: it offers Neat Socket products for sale to Texas residents through Amazon.com, causes those products to be shipped to Texas addresses through Amazon's fulfillment network, and on information and belief, has sold the products and

disseminated the advertising challenged here to Texas consumers. In February 2024, Neat Socket products purchased online were shipped to Intertek Assurance, which conducted the review described below and issued its report from its office in Plano, Texas. Socket Solutions' claims arise out of and relate to those Texas contacts.

16. This Court has personal jurisdiction over Olcorife. Olcorife purposefully directs its advertising and sales to Texas: it offers its product for sale to Texas residents through Amazon.com, causes that product to be shipped to Texas addresses through Amazon's fulfillment network, and on information and belief has sold products and disseminates the advertising challenged here—including the statements printed on the product's package and leaflet—to Amazon customers in all 50 States, including Texas. Socket Solutions' claims against Olcorife arise out of and relate to those Texas contacts. Further, Olcorife has sold accused product into Texas. In the alternative, if Olcorife is not subject to jurisdiction in any state's courts of general jurisdiction, this Court has personal jurisdiction over Olcorife under Federal Rule of Civil Procedure 4(k)(2), because Socket Solutions' claim arises under federal law and Olcorife's contacts with the United States as a whole—its sale of products to consumers throughout the United States through Amazon.com and Amazon's domestic fulfillment network—make the exercise of jurisdiction consistent with the United States Constitution and laws.

17. Upon information and belief, this Court has personal jurisdiction over each Doe Defendant. Each Doe Defendant directed false statements about the products of a Texas company to Amazon, intending to cause Amazon to suspend or remove that company's listings and knowing that the resulting injury would be suffered by Socket Solutions in Texas, where it is headquartered. Socket Solutions' claims against the Doe Defendants arise out of that conduct.

18. Venue is proper in this District under 28 U.S.C. § 1391(b)(2) because a substantial

part of the events giving rise to Socket Solutions' claims occurred here: Defendants advertised and sold the Accused Products (defined below) to consumers in this District, and Socket Solutions, which is headquartered in this District, lost sales and suffered injury here. Venue is also proper under 28 U.S.C. § 1391(b)(1) and (c)(2) because each entity Defendant is subject to personal jurisdiction in this District and is therefore deemed to reside here. To the extent Olcorife is not resident in the United States, it "may be sued in any judicial district," and its joinder is disregarded in determining venue as to the other Defendants. 28 U.S.C. § 1391(c)(3).

19. Joinder of Import Global and Olcorife is proper under Federal Rule of Civil Procedure 20(a)(2). Socket Solutions asserts its rights to relief against them severally with respect to and arising out of the same series of transactions or occurrences: each Defendant, through the same marketplace, in the same "Extension Cords" category, and to the same consumers, sells a competing outlet-concealer extension cord using on information and belief the same parts that violates the same requirements of the same safety standard, advertises that product as safe, and thereby diverts sales from the same Sleek Socket products, causing Socket Solutions the same injury. Questions of law and fact common to all Defendants will arise in this action, including whether UL 817 governs outlet-concealer extension cords that employ supplementary charging circuits; whether below Table 10.13A of UL 817 permits a 16 AWG cord to serve more than two NEMA outlets on such a device; whether UL 817 requires the markings and warning tag described below; and whether a seller who advertises such a product as safe, or as conforming to UL standards, while the product violates those requirements, makes a false or misleading representation of fact under 15 U.S.C. § 1125(a)(1)(B). .

**Table 10.13A**
**Number of permitted outlets, outputs, and circuits for devices employing supplementary charging circuits and/or induction power transmitters**

| Cord Size, AWG ($mm^2$) | Max. No. of NEMA outlets | Max. No. of supplementary charging circuit outputs | | Max. no. of induction power transmitter circuits |
|---|---|---|---|---|
| | | Type USB-A or USB-B | Type USB-C | |
| 18 (0.82) | 1 | 2 | 1 | 1 |
| 16 (1.31) | 2 | 3 | 1 | 1 |
| 14 (2.08) | 3 | 5 | 1 | 1 |
| 12 (3.31) | 3 | 5 | 1 | 1 |

**20.** Joinder of the Doe Defendants is likewise proper under Federal Rule of Civil Procedure 20(a)(2). Socket Solutions' claims against them arise out of the same series of transactions or occurrences as its claims against the Seller Defendants: competition among sellers of outlet-concealer products on Amazon.com, in which uncertified products are advertised as safe while a certified competitor is targeted with false safety complaints designed to remove it from the marketplace. Questions of law and fact common to all Defendants will arise in this action, including whether the Sleek Socket products conform to the safety standards that govern outlet-concealer extension cords, what those standards require, and whether statements about the safety of the parties' competing products are true.

## V. FACTUAL ALLEGATIONS

### A. Socket Solutions and the Sleek Socket

21. Socket Solutions designs, markets, and sells Sleek Socket, an outlet-concealer product line. Socket Solutions is the inventor and the original seller of the Sleek Socket, a line of patented outlet concealers and flat extension cords designed to hide bulky plugs and messy cords. By plugging directly into an existing duplex outlet, its pencil-thin design sits flush against the wall, allowing furniture like couches, beds, and desks to be pushed entirely flat against the wall without damaging cables.




22. The Sleek Socket products first began selling in 2018, and Sleek Socket products are sold on Amazon marketplaces and Walmart in-store and Walmart.com, sold in the U.S., Canada, Mexico, and South America. The Sleek Socket products for sale on Amazon.com have a 4.5 star out of 5 rating with 32,185 reviews. Since its entrance into the outlet concealer market, Socket Solutions has spent substantial time, money, and resources to establish a reputation among the public for providing quality and safe products to consumers and has garnered widespread goodwill among consumers as a result.

23. Since 2018, the Sleek Socket products have been certified by Intertek, a Nationally Recognized Testing Laboratory, as conforming to applicable UL standards (U.S.) and CSA standards (Canada). Intertek conducts random, unscheduled inspections of the Sleek Socket production facility every quarter, and has done so in every quarter of every year since 2018. Socket Solutions maintains that certification and provides Amazon with the safety documentation Amazon requires of sellers of plug-in electrical products.

24. Compliance costs money. Building to UL 817 requires cords heavy enough for the product's outlet and charging configuration, compliant components, required markings and

warning tags, third-party testing, and the ongoing costs of maintaining certification, including quarterly random inspections of Socket Solutions' manufacturing facilities and production. Socket Solutions bears those costs.

**B. Import Global and the Neat Socket**

25. Import Global sells a competing outlet-concealer extension cord under the name "Neat Socket" through Amazon.com, including under Amazon Standard Identification Numbers ("ASIN") B0CDNPSXJV and B0CDNGWFLG, for which Amazon identifies "Import Global, LLC." as the seller and Amazon as the shipper. Each unit has a plug concealed behind a cover plate that fits over the top receptacle of a standard duplex wall outlet, connected by a flexible cord to a strip with three AC outlets and two USB charging ports. The product has been sold in white and black, with three-foot and eight-foot cords. Import Global titles the product "Original Neat Socket 3ft Flat Extension Cord, Flat Plug Power Strip w/ USB." *See* Amazon seller page images below; Ex. A at 1.






26. The supply cord of each Neat Socket unit is marked 16 AWG. Import Global's listing assigns the product a "Maximum Current" of "15 A" and an "Amperage" of "13 A," at "125 volts." Ex. A at 5.

27. The Neat Socket and the Sleek Socket compete for the same customers, in the same product category, on the same marketplace. As of October 13, 2026, Import Global offered the three-foot Neat Socket for $17.77 and the eight-foot model for $21.88, and Amazon reported that more than 500 units had been bought in the past month. Ex. A at 1. Sleek Socket pricing ranges from $22.95 to $28.95, depending on device features such as cord length, surge availability, etc.

**C. Olcorife and the Olcorife Products**

28. Olcorife sells competing outlet-concealer extension cords through Amazon.com under at least the following eight ASINs, for each of which Amazon identifies "olcorife" as the seller and Amazon as the shipper. Olcorife titles the listings as follows:

(a) ASIN B0DLK9NQ4P: "Olcorife Flat Extension Cord with Outlet Cover, Flat Plug Power Strip with 6 Outlets and 3 USB Ports, 3 FT Cord Hidden Outlet Extender for Tight Spaces";

(b) ASIN B0FLDM14L8: "Olcorife Flat Extension Cord with Outlet Cover,

Flat Plug Power Strip with 6 Outlets, 3 FT Cord Hidden Outlet Extender for Tight Spaces";

(c) ASIN B0CX93B7MX: "Olcorife Flat Extension Cord with Outlet Cover, Flat Plug Power Strip with 6 Outlets and 3 USB Ports, 5 FT Cord Hidden Outlet Extender for Tight Spaces";

(d) ASIN B0FB9D3158: "Olcorife Flat Extension Cord with Outlet Cover, Flat Plug Power Strip with 6 Outlets, 5 FT Cord Hidden Outlet Extender for Tight Spaces";

(e) ASIN B0CX8V85MV: "Olcorife Flat Extension Cord with Outlet Cover, Flat Plug Power Strip with 8 Outlets and 4 USB Ports, 5 FT Cord Hidden Outlet Extender for Tight Spaces";

(f) ASIN B0GSQKYJMR: "Olcorife Flat Extension Cord with Outlet Cover, Flat Plug Power Strip with 6 Outlets and 3 USB Ports, 5 FT Cord Hidden Outlet Extender for Tight Spaces, Pack of 2";

(g) ASIN B0GRT1C1QN: "Olcorife Flat Extension Cord with Outlet Cover, Flat Plug Power Strip with 6 Outlets and 3 USB Ports, 8 FT Cord Hidden Outlet Extender for Tight Spaces"; and

(h) ASIN B0D46BJCS1: "Olcorife Flat Extension Cord with Outlet Cover, Flat Plug Power Strip with 6 Outlets and 3 USB Ports, 10 FT Cord Hidden Outlet Extender for Tight Spaces."




29. The eight products are referred to collectively as the "Olcorife Products." Six of them—ASINs B0DLK9NQ4P, B0CX93B7MX, B0CX8V85MV, B0GSQKYJMR, B0GRT1C1QN, and B0D46BJCS1—combine six or eight AC outlets with three or four USB charging ports (the "USB-Equipped Olcorife Products"). Two—ASINs B0FLDM14L8 and B0FB9D3158—have six AC outlets and no USB ports. The product offered under ASIN B0D46BJCS1, units of which Socket Solutions purchased and examined, is referred to as the "Olcorife Power Strip." The Neat Socket and the Olcorife Products are referred to collectively as the "Accused Products." Olcorife's Amazon.com product detail page presents the Olcorife Products as size and style variations of a single listing, offering the sizes "3 FT," "5 FT," "5 FT(Dual)," "5 FT(Pack of 2)," "8 FT," and "10 FT" and the styles "6AC," "6AC(No USB)," and "8AC." Ex. C at 1. Amazon classifies the listing under "Electronics › Accessories & Supplies › Power Strips & Surge Protectors › Power Strips." *Id.* The listing identifies the manufacturer as "SHENZHEN XIANFENGTONGLE TECHNOLOGY CO.LTD" and the model number as "DM1." *Id.* at 2. Like the Neat Socket, the Olcorife Power Strip has a flat plug concealed behind

a cover plate that fits over a wall receptacle, connected by a flexible cord to a block of AC outlets and USB charging ports. Olcorife's package calls the product a "Flat Plug Power Strip With Outlet Cover," and the Amazon fulfillment label on the package identifies it as "Model: WH1." Ex. D. Each Olcorife Product is sold under the Olcorife brand, through the same seller account, in the same flat-plug, cover-plate, and flat-cord configuration as the Olcorife Power Strip. Upon information and belief, each Olcorife Product employs the same 16 AWG flat supply cord, carries the same markings and omits the same required markings and warning tag, and is sold with the same package and instruction leaflet as the Olcorife Power Strip. Accordingly, except where this Complaint states otherwise, the allegations concerning the construction, markings, packaging, leaflet, and advertising of the Olcorife Power Strip apply, upon information and belief, to each Olcorife Product, and the allegations concerning Table 10.13A apply to each USB-Equipped Olcorife Product.

30. The Olcorife Power Strip, in the "6AC" style, has six AC outlets and three USB charging ports. Olcorife advertises: "The power strip provides 6 AC and 3 USB to charge 9 devices simultaneously." Ex. C at 1. Olcorife also offers the product in styles designated "6AC(No USB)" and "8AC." *Id.* The supply cord of the Olcorife Power Strip is marked 16 AWG. Olcorife rates the product at "1250W/125V/10A." Ex. D.

31. The Olcorife Power Strip and the Sleek Socket compete for the same customers, in the same product category, on the same marketplace. As of October 13, 2026, Olcorife offered the Olcorife Products in cord lengths from three to ten feet at prices from $14.39 to $24.99, and in two-unit configurations for $31.99; Amazon reported that more than 1,000 units had been bought in the past month, displayed 2,897 customer ratings, and ranked the product tenth in its "Power Strips" category. Ex. C at 1–2.

32. Amazon displays its "Amazon's Choice" designation directly beneath the title of the Olcorife Power Strip listing, alongside the product's star rating and the notice that more than 1,000 units were bought in the past month. Ex. C at 1.




Upon information and belief, Amazon confers that designation on products it recommends to buyers.

**D. UL 817 Exists to Prevent Fire, Electric Shock, and Death**

33. UL 817, the Standard for Safety for Cord Sets and Power-Supply Cords, is the U.S. safety standard applicable to products of this type. Upon information and belief, UL Standards & Engagement has confirmed that UL 817 is the appropriate standard for certifying products of this design.

34. UL 817 addresses the hazards that electrical cords present. Intertek, an independent testing laboratory, evaluated the Neat Socket against UL 817 because it is "the most applicable

standard to understand how the product is mitigating the potential risk for fire, electric shock and personal injury."

35. Table 10.13A of UL 817 sets the number of outlets permitted on a device that employs supplementary charging circuits, such as USB ports, according to the gauge of its cord. For a 16 AWG cord, the table permits a maximum of two NEMA outlets, three USB-A or USB-B outputs, and one USB-C output. A device with three NEMA outlets requires a cord of 14 AWG or heavier. No cord size listed in the table—not even 12 AWG—permits more than three NEMA outlets on such a device.

36. The limit matters. As an independent product-safety consultant has explained, "[u]ndersized wires could lead to overheating under high current draw and could possibly result in short circuit or fire."

37. UL 817 also requires markings and warnings that tell consumers how to use a cord set safely, including the manufacturer's name or trademark and a distinctive catalog number (clause 20.1); the marking "FOR USE ONLY WHERE NOT SUBJECT TO FREQUENT FLEXING," or its equivalent, on extension cord sets using SPT-2 cord (clause 21.1.4); indoor-use and maximum-current warnings (clause 21.1.11); the rated voltage and current adjacent to each charging connector (clause 21.1.15); and a prescribed warning tag (clause 21.3).

38. These warnings are not formalities. UL 817 requires extension cord sets to state: "WARNING – To reduce the risk of electric shock, this product is for indoor use only." It further requires, within three inches of each cord connector: "WARNING – To reduce the risk of fire, the total amperes drawn from all the cord connectors shall not exceed ____ Amps".

39. The warning tag UL 817 prescribes for extension cord sets is more direct still. It is headed "DANGER: ELECTRICAL CORDS CAN BE HAZARDOUS," and it warns: "Misuse

Can Result in FIRE or DEATH by ELECTRICAL SHOCK." The tag instructs users to "Keep Children and Pets Away From Cord" and to "AVOID OVERHEATING." *Id.*

**Figure 21.1**

**Marking tag**



DANGER: ELECTRICAL CORDS CAN BE HAZARDOUS

Misuse Can Result In FIRE or DEATH by ELECTRICAL SHOCK
Please Read BOTH SIDES Carefully and Follow All Directions.

BEFORE USE

- A Cord Set Not Marked For Outdoor Use Is To Be Used Indoors Only. See Label For Outdoor Marking.
- Inspect Thoroughly Before Each Use. DO NOT USE IF DAMAGED.
- Look For the NUMBER OF WATTS On Appliances To Be Plugged Into Cord.
- See PRODUCT or LABEL Markings for SPECIFIC WATTAGE.
- Do Not Plug More Than the SPECIFIED NUMBER OF WATTS Into This Cord.
- Do Not Run Through Doorways, Holes in Ceilings, Walls or Floors.
- Make sure Appliance is OFF Before Connecting Cord to Outlet.
- FULLY INSERT Plug Into Outlet.
- Do Not Remove, Bend or Modify Any Metal Prongs or Pins of Cord.
- Do Not Use Excessive Force to Make Connections.
- Do Not Connect a Three-Prong Plug to a Two-Hole Cord.

THIS IS A POLARIZED CORD

DANGER: ELECTRICAL CORDS CAN BE HAZARDOUS

Misuse Can Result In FIRE or DEATH by ELECTRICAL SHOCK
Please Read BOTH SIDES Carefully and Follow All Directions.

DURING USE

- Keep Away From Water.
- DO NOT USE WHEN WET.
- Keep Children and Pets Away From Cord.
- Do Not Plug One Extension Cord Into Another
- AVOID OVERHEATING. Uncoil Cord and Do Not Cover It With Any Material.
- Do Not Drive, Drag or Place Objects Over Cord.
- Do Not Walk on Cord.

AFTER USE

- GRASP PLUG to Remove From Outlet
- Always Store Cord INDOORS.
- Always Unplug When Not In Use.
- Do Not Unplug By Pulling On Cord.

DO NOT REMOVE THIS TAG

**E. Both Import Global and Olcorite Accused Products Violate UL 817 in the Same Respects, Are Uncertified, Cannot Be Certified, and Are Dangerously Unsafe**

40. In February 2024, Socket Solutions engaged Intertek USA Inc., through its Intertek Assurance unit ("Intertek"), to evaluate the Neat Socket against UL 817 (12th ed.). Four new Neat

Socket units—two white units with eight-foot cords, one black unit with an eight-foot cord, and one black unit with a three-foot cord—were purchased from an online retailer and shipped directly to Intertek for evaluation.

41. Intertek issued its final report on May 1, 2024. Intertek found:

(a) with respect to Table 10.13A: "The Import Global samples employ a 16AWG cord, as marked on the supply cord and (3) NEMA outlets. This is not compliant with the table above."

(b) the models reviewed "do not bear the manufacturer's name or a distinct model number or catalog number as required by clause 20.1.";

(c) the samples do not employ the marking required by clause 21.1.4.

(d) the samples do not employ the warning markings required by clause 21.1.11, or the charging-circuit rating marking required by clause 21.1.15; and

(e) the samples employ a warning tag, "but all the markings contained herein are not provided," as clause 21.3 requires.

42. Intertek concluded that "these products would be considered non-compliant to UL 817 in their current state (the physical product and provided literature and labelling)."

43. The noncompliance persists, and it is not unique to Import Global. In October 2026, Socket Solutions purchased new Neat Socket units and new Olcorife Power Strip units from Amazon.com and examined them. That examination confirmed that the Neat Socket is unchanged: the units still employ a 16 AWG cord serving three NEMA outlets and two USB charging ports and still lack the markings and warnings described in Paragraph 41. It also established that the Olcorife Power Strip shares each of those defects and, in two respects, is worse.

44. Each Accused Product violates the following requirements of UL 817:

(a) **Cord size and outlet count (Table 10.13A).** *Neat Socket:* a 16 AWG cord serving three NEMA outlets and two USB charging ports—one more NEMA outlet than Table 10.13A permits on a 16 AWG cord, as Intertek found. *Olcorife Power Strip:* a 16 AWG cord serving six NEMA outlets and three USB charging ports—three times the two NEMA outlets Table 10.13A permits on a 16 AWG cord, and twice the three NEMA outlets it permits on a cord of any listed gauge.

(b) **Catalog or model number (clause 20.1).** *Neat Socket:* does not bear the manufacturer's name or a distinct model or catalog number, as Intertek found. *Olcorife Power Strip:* does not bear a distinct model or catalog number; the only model designation, "WH1," appears on an Amazon fulfillment label affixed to the outside of the package. Ex. D.

(c) **Flexing marking (clause 21.1.4).** *Neat Socket:* does not bear the marking "FOR USE ONLY WHERE NOT SUBJECT TO FREQUENT FLEXING," or its equivalent, as Intertek found. *Olcorife Power Strip:* does not bear that marking or its equivalent on its package or leaflet, Ex. D, or on the product or its cord.

(d) **Indoor-use and total-amperes warnings (clause 21.1.11).** *Neat Socket:* bears neither warning, as Intertek found. *Olcorife Power Strip:* bears neither warning. Its package and leaflet say only "For indoor use only" and "Don't exceed the rated power(1250W) of the power strip." **Ex. D.** They omit the prescribed warning that the product is for indoor use only "[t]o reduce the

risk of electric shock," and no warning appears within three inches of each cord connector that, "[t]o reduce the risk of fire, the total amperes drawn from all the cord connectors shall not exceed" the product's rated current.

(e) **<u>Charging-circuit rating (clause 21.1.15).</u>** *Neat Socket:* does not bear its rated voltage and current adjacent to its charging connectors, as Intertek found. *Olcorife Power Strip:* does not bear its rated voltage and current adjacent to its charging connectors. Its ratings appear only in its printed materials, and those materials are inconsistent: the package lists separate "USB-A Output" and "USB-C Output" ratings, while the leaflet lists a single "USB Output" rating. Ex. D.

(f) **<u>Warning tag (clause 21.3).</u>** *Neat Socket:* carries a warning tag that omits markings the prescribed tag requires, as Intertek found. *Olcorife Power Strip:* carries no warning tag at all. None of the prescribed tag's content—including "DANGER: ELECTRICAL CORDS CAN BE HAZARDOUS," "Misuse Can Result in FIRE or DEATH by ELECTRICAL SHOCK," "Keep Children and Pets Away From Cord," and "AVOID OVERHEATING. Uncoil Cord and Do Not Cover It With Any Material"—appears on the product, its package, or its leaflet. Ex. D.

45. The Olcorife Power Strip's violations exceed the Neat Socket's in two respects. First, its outlet count violates Table 10.13A no matter what cord it uses: no cord gauge the table lists permits six NEMA outlets on a device with USB charging circuits. Second, where the Neat Socket carries an incomplete warning tag, the Olcorife Power Strip carries none, so a consumer who buys it receives none of the warnings UL 817 prescribes against fire and death by electrical

shock. These are not technical lapses. The Olcorife Power Strip is inherently dangerous: its principal defect lies in its design, and no label, marking, or warning can cure it. The same is true of every USB-Equipped Olcorife Product. Each combines six or eight AC outlets with USB charging ports, as its own listing title states. Because Table 10.13A permits no more than three NEMA outlets on such a device on any cord size the table lists (Paragraph 35), each USB-Equipped Olcorife Product violates Table 10.13A by design, whatever the gauge of its cord. The eight-outlet model, ASIN B0CX8V85MV, exceeds that limit by five outlets.

46. The cord-gauge defect in each Accused Product is one of design, not labeling. A 16 AWG cord serving three—or six—outlets and USB charging circuits exceeds what Table 10.13A permits regardless of how the product is marked. As designed, therefore, neither Accused Product can be certified to UL 817. No label, warning, or paperwork can cure the defect; only redesign can. The Neat Socket would require a heavier cord or fewer outlets. The Olcorife Power Strip would require fewer outlets, because no cord gauge listed in Table 10.13A permits six.

47. Nor can the Olcorife Power Strip, as constructed, satisfy UL 1363—the very standard Olcorife invokes. UL 1363 requires a relocatable power tap rated below 20 amperes to employ a supply cord with conductors of not less than 14 AWG, and permits a smaller conductor only where the product provides an overcurrent protective device and passes UL 1363's temperature, fault-current, and overcurrent tests with the smaller wire. UL 1363 § 14.1.3 & Table 14.1 n.b (5th ed. 2018). The Olcorife Power Strip uses a lighter 16 AWG cord, and no Nationally Recognized Testing Laboratory has marked it as having passed those tests. UL 1363 also limits the supply cord of a relocatable power tap to heavy-duty cord Types SJ, SJE, SJO, SJT, SJTO, or equivalent, or, for a product rated 15 amperes or less, Type SPT-3 bearing a prescribed marking. *Id.* § 14.1.1. The Olcorife Power Strip's flat SPT-2 cord is none of these.

48. Neither Accused Product bears the certification mark of any Nationally Recognized Testing Laboratory—not UL, not ETL, not CSA, and not any other. In May 2024, an independent product-safety consultant found that the Neat Socket bore no safety-certification mark. Socket Solutions' October 2026 examination confirmed that neither the Neat Socket nor the Olcorife Power Strip bears any such mark on the product, its cord, its package, or its enclosed materials. The only marks on the Olcorife package are an FCC logo and a house symbol. Ex. D. None of the Olcorife Product bears the certification mark of any Nationally Recognized Testing Laboratory. Although Table 10.13A does not govern the two Olcorife Products without USB ports, those products are cord sets within the scope of UL 817 and, upon information and belief, are uncertified and are sold with the same package and leaflet representing that the device "conforms to UL1363, UL62368, and part 15 of the FCC rules."

49. The absence of certification is not a technicality. Amazon requires sellers of electrical and electronic products to provide proof that their products comply with applicable UL or equivalent Nationally Recognized Testing Laboratory standards. Paragraph 74. Listing by such a laboratory is how a consumer, a retailer, and a marketplace can know that a product's construction has been independently tested against the safety standard that governs it. Each Defendant sells a product that lacks that certification, cannot obtain it as designed, and yet is advertised to consumers as safe.

50. Each Accused Product is dangerously unsafe. Each of its defects bears on the hazards UL 817 exists to prevent. Each Accused Product's undersized cord serves more outlets and charging circuits than the standard permits, creating a risk of overheating, short circuit, and fire. Each omits the warnings UL 817 requires "[t]o reduce the risk of electric shock" and "[t]o reduce the risk of fire." And neither carries the complete tag that warns consumers that misuse

"Can Result in FIRE or DEATH by ELECTRICAL SHOCK": the Neat Socket carries an incomplete version, and the Olcorife Power Strip carries none. A consumer who installs either Accused Product as its seller advertises is exposed to a risk of fire, electric shock, personal injury, and death by electrical shock that compliance with UL 817 is designed to reduce.

**F. Defendants Falsely Advertise the Accused Products as Safe**

**1. Import Global's Statements About the Neat Socket**

51. Import Global does not market the Neat Socket merely as a convenience. It markets it as a safety product. On its Amazon.com product detail page for ASIN B0CDNPSXJV, captured on October 13, 2026, and attached as **Exhibit A**, Import Global states:

(a) "SAFETY ELECTRICAL OUTLET CONCEALER – The neat socket extension cord with multiple outlets that safely hides ugly, unsafe, and bulky electrical outlets and cords. . . . Safety and aesthetics combined in one essential product[.]" Ex. A at 1;

(b) "EASY INSTALLATION – Smart extension cord, simply attach the neat socket outlet covers for baby proofing to the top receptacle of a duplex outlet." Ex. A at 1;

(c) "CHILD AND PET FRIENDLY – The neat socket outlet cover and flat wall plug deters children and pets from accessing and chewing dangerous electrical plugs & cords[.]" Ex. A at 1;

(d) "Eliminate bulky plugs and messy cords with Neat Socket's sleek, low-profile design. Create a neater, safer space while allowing furniture to sit flush against the wall." Ex. A at 3;

(e) "DETERS PETS AND CHILDREN FROM TAMPERING WITH

DANGEROUS CORDS AND WIRES," displayed with images of a toddler and a dog seated beside a wall outlet. Ex. A at 3–4; and

(f) "Our 3ft and 8ft Neat Sockets are meticulously designed to conceal electrical outlets, seamlessly integrating safety while providing full access to your electrical outlets. Our goal is to help you create a neat home and safe haven for every family member." Ex. A at 5.

52. The same page promotes the product as one that "HIDES Behind Furniture." **Ex. A** at 1, 5. It also compares the Neat Socket with a "Generic" power strip and represents that the Neat Socket—"The Original"—has "High-quality materials" and "2 USB-C Ports." **Ex. A** at 4. Upon information and belief, the Neat Socket has no USB-C port. The image that accompanies the claim depicts two rectangular USB-A ports; the listing's own specifications describe "2 USB PORTS"; and a verified purchaser reported that "this doesn't have USB C it's only the regular USB." Ex. A at 1, 4, 7.

53. The Neat Socket packaging and enclosed materials state: "Warning read this entire label and follow all precautions carefully. Misuse of electrical cords may result in electrical shock or fire that can cause injury or death," "Conceals Unsafe and Unsightly Cords and Plus," "Fits Behind All Furniture," "Adhesive Cord Concealing Kit Included," "3 Foot, 3 Outlet Power Strip with 2 USB Ports," Fits all Duple Outlet Sizes," "Allows Furniture to be moved flushly against the wall," "Maximum Watts: 1625," "Maximum Amps 13," "Maximum Volts 125," and "Ultra Thin 3 Power Outlet Power Strip with 2 USB Ports" Photographs of the packaging and enclosed materials are attached as **Ex. B**.

54. These statements are commercial advertising and promotion. Import Global disseminates them to the purchasing public, on the page where consumers decide whether to buy,

to induce consumers to buy the Neat Socket.

55. These are statements of fact, not puffery. Each makes a specific claim about the product's safety function: that it is a "SAFETY" device; that it makes a home safer by concealing outlets Import Global itself calls "unsafe"; and that it is fit for "baby proofing" and is "CHILD AND PET FRIENDLY." Whether an extension cord is safe for its intended use can be verified against an objective, published standard—UL 817.

56. The statements are false. The Neat Socket is not a safety product. It is a dangerously unsafe cord set whose design exceeds the limits of the safety standard that governs it and that omits the markings and warnings that standard requires. Import Global invites consumers to replace a standard wall outlet—which it calls "unsafe"—with a 16-gauge cord feeding three outlets and two USB charging circuits, a configuration UL 817 does not permit, and to hide that cord "Behind Furniture," where overheating is least likely to be noticed.

57. The "CHILD AND PET FRIENDLY" claim cannot be reconciled with the safety standard itself. UL 817 requires extension cord sets to carry a tag instructing users to "Keep Children and Pets Away From Cord." Import Global tells consumers the opposite: that its extension cord is "CHILD AND PET FRIENDLY" and suitable for "baby proofing." Ex. A at 1. Import Global's own warning tag contradicts its advertising.

58. In the alternative, the statements are misleading. Read as a whole, the listing tells consumers that the Neat Socket meets accepted electrical-safety requirements and makes the home safer. That message is false. Consumers receive it: a verified purchaser wrote that the Neat Socket "provides some extra protection for your important electronics." **Ex. A** at 8.

**2. Olcorife's Statements About the Olcorife Power Strip**

59. Olcorife markets the Olcorife Power Strip as a product that meets recognized safety

standards. The back panel of its package and page 2 of the instruction leaflet enclosed with each unit state: "The device conforms to UL1363, UL62368, and part 15 of the FCC rules." The package and leaflet also advertise "Surge Protection: 2000 Joules." Photographs of the package, its fulfillment label, and the leaflet are attached as **Exhibit D**.

60. Olcorife's Amazon.com product detail page for the Olcorife Products (ASIN B0DLK9NQ4P and its variations), captured on October 13, 2026, and attached as **Exhibit C**, further states:

(a) "【1 Charge for 9】The power strip provides 6 AC and 3 USB to charge 9 devices simultaneously." Ex. C at 1;

(b) "【Overload Protection】The built-in circuit breaker cuts the power off when it's overloaded." Ex. C at 1;

(c) "【Space Saving】The ultra thin flat plug can perfectly fit in tight spots and save spaces." Ex. C at 1; and

(d) "Hidden Outlet Extender for Tight Spaces." Ex. C at 1.

61. These statements are commercial advertising and promotion. Olcorife disseminates them to the purchasing public—on the page where consumers decide whether to buy and on the package and leaflet that accompany every unit—to induce consumers to buy the Olcorife Power Strip. Because Olcorife offers every Olcorife Product as a variation of the same product detail page, Ex. C at 1, those statements are made to every consumer who considers any Olcorife Product. Upon information and belief, the package and leaflet of each Olcorife Product bear the statements quoted in Paragraph 59.

62. The statement that the Olcorife Power Strip "conforms to UL1363, UL62368" is a statement of fact, not puffery. It names specific, published safety standards and represents that the

product meets them. Whether a product conforms to a published UL standard can be verified objectively.

63. The statement is false. The Olcorife Power Strip is a cord set whose design violates UL 817, the safety standard governing outlet-concealer extension cords that employ supplementary charging circuits, and it omits the markings and warning tag that standard requires. Paragraphs 44–45. A product that violates the safety standard governing it does not conform to UL safety requirements in any sense a consumer would understand. Upon information and belief, the Olcorife Power Strip also does not conform to UL 1363, the standard Olcorife invokes, including the surge-protective-device requirements that apply to a relocatable power tap with surge protection and more than two outlets. The product, its package, and its leaflet bear no certification mark of any Nationally Recognized Testing Laboratory. **Ex. D**.

64. In the alternative, Olcorife's statements are misleading. Read together, the package, leaflet, and listing tell consumers that the Olcorife Power Strip meets accepted electrical-safety standards, that it can power nine devices "simultaneously," and that it is fit to be hidden in "tight spaces." That message is false. UL 817 does not permit a 16 AWG cord to serve more than two NEMA outlets on a device with USB charging circuits, let alone six outlets and three USB ports at once, and it requires a tag instructing consumers to "AVOID OVERHEATING" and to "Uncoil Cord and Do Not Cover It With Any Material." The Olcorife Power Strip carries no such tag. The listing also misleads by implication about grounding. It identifies the product's plug as "Type A - 2 pin (North American)"—an ungrounded, two-prong plug—while its images depict a strip of three-slot, grounding-type receptacles. Ex. C at 1–2.

**3. Olcorife's False Surge-Protection Claim**

65. Olcorife represents on the package and leaflet of every unit that the Olcorife Power

Strip provides "Surge Protection: 2000 Joules." **Ex. D**. That representation tells consumers that the product is a surge protector. A genuine surge protective device contains components—typically metal oxide varistors or equivalent circuitry—designed to clamp or divert transient voltage spikes, such as those caused by lightning, utility switching, or grid disturbances, before they reach connected equipment. A power strip that merely multiplies outlets provides no such protection. Olcorife repeats the representation on its Amazon.com listing, which identifies the product's "Surge Protection Rating" as "2000 Joules," Ex. C at 2, and Amazon classifies the listing under "Power Strips & Surge Protectors," *id.* at 1.

66. In the United States, the safety and performance of surge protective devices are governed by UL 1449, the Standard for Surge Protective Devices. UL 1363 itself so provides: a cord-and-plug-connected relocatable power tap with three or more receptacle outlets that employs a surge protective device "shall also comply with the Standard for Surge Protective Devices, UL 1449, for SPD Type 3." UL 1363 § 7.11; *see id.* § 1.5. Olcorife therefore invokes the wrong standard for the very feature it advertises. It claims conformance to UL 1363, which governs power strips generally, but claims no conformance to UL 1449, which governs surge protection. **Ex. D.** No Nationally Recognized Testing Laboratory has listed the Olcorife Power Strip under UL 1449.

67. Upon information and belief, the Olcorife Power Strip does not provide the surge protection it advertises and does not comply with UL 1449. It bears no mark evidencing UL 1449 compliance. It is built on a 16 AWG cord lighter than the 14 AWG minimum that UL 1363 prescribes for products of its rating. And Olcorife disclaims its own representations, stating in the leaflet that "[t]his information is for reference only and does not constitute any form of commitment." Ex. D.

68. A false surge-protection claim endangers consumers in two ways. First, consumers

who rely on it connect computers, televisions, networking equipment, and other costly electronics in the belief that the equipment is protected; when a surge occurs, that equipment can be damaged or destroyed. Second, uncertified power strips and "surge protectors" present direct fire and shock hazards. The U.S. Consumer Product Safety Commission has warned consumers that power strips and surge protectors sold at discount retailers had "undersized wires, loose connections, faulty components or improper grounding," that "72 percent of the samples failed to meet current safety standards," and that "[s]ome have counterfeit Underwriters Laboratories (UL) certification labels." U.S. Consumer Prod. Safety Comm'n, *CPSC Warns Consumers About Faulty Extension Cords, Power Strips, and Surge Protectors* (Feb. 24, 1999). UL has likewise warned that surge protectors "not authorized to bear the UL Mark" "may pose a fire hazard." UL, *UL Reissues Warning of Potentially Hazardous Surge Protectors* (June 20, 2019).

69. The stakes are measured in lives. According to the National Fire Protection Association, U.S. fire departments responded to an estimated annual average of 45,210 home structure fires involving electrical failure or malfunction from 2010 to 2014, causing an estimated 420 civilian deaths, 1,370 civilian injuries, and $1.4 billion in direct property damage each year. Richard Campbell, Nat'l Fire Prot. Ass'n, *Electrical Fires* 1 (Mar. 2017).

**G. The Misrepresentations Deceive Consumers and Are Material**

70. Safety is material to consumers who buy plug-in electrical products. The risk at stake here is fire and death by electrical shock. No fact is more important to a consumer deciding whether to install an electrical product in the home, particularly one marketed for concealment behind furniture and in households with children and pets. Import Global itself treats safety as a selling point: "SAFETY" is the first word of the first feature it advertises. Ex. A at 1. Olcorife invokes UL safety standards by name on its package and leaflet. Ex. D.

71. The risk is heightened by how the products are used. Import Global markets the Neat Socket to be hidden "Behind Furniture," **Ex. A** at 1, and Olcorife markets its product as a "Hidden Outlet Extender for Tight Spaces," **Ex. C** at 1. Consumers use them that way. One verified purchaser of the Neat Socket explained that "[o]ne of the only outlets in our main bedroom is directly behind the bed." **Ex. A** at 8. A verified purchaser of an Olcorife Product wrote that it is "so flat that [I] can put the crib right up against the wall." **Ex. C** at 4. A cord concealed behind a bed, crib, or dresser is one a consumer is unlikely to see overheat.

72. Consumers cannot test these claims for themselves. Ordinary consumers do not know the relationship between cord gauge and the number of outlets and charging circuits a cord may safely serve, and cannot evaluate a product's internal construction or its conformance to a technical standard. Determining that the Accused Products do not comply with UL 817 required comparing their construction, markings, and warnings to the standard's technical requirements—for the Neat Socket, through a laboratory review. Consumers therefore rely on the seller's representations.

73. The Seller Defendants' statements have deceived, or are likely to deceive, a substantial segment of the consumers to whom they are directed. Each listing reaches a large audience and at least one purchaser has described the Neat Socket as providing "extra protection." Ex. A at 1, 6, 8. Other reviews of the Import Global Products in Ex. A show further deception of the product being safe: Francesca wrote "Great for child proofing!. . . with this I'm able to cover the whole outlet, secure the wire to the wall and plug in the things I need safely away from my baby." JC wrote "Safe outlets. . . I can now slide my dress up to my wall without having to worry about damaging my outlet and plug wiring which could be hazardous with damages wires." Rdeokttn wrote "Chile & Pet safe." Daniel wrote: "perfect solution to an outlet near my child's

bed. . . it looks very clean and made the outlet a lot safer! Nate wrote: "This is the best thing when it comes to children or small pets." Reliable wrote: "Got this because I have little ones who like to play around one main electrical socket." Fox5chs wrote: "Installed by crib. . . Just what was needed to keep baby girl from messing with the outlet. . . ." Furthermore, at least one consumer was deceived into purchasing the Import Global product believing that it was safe, and they discovered after use that it was not safe: Abdul wrote: "My baby can take this out. This does not flush nicely with the wall." Amazon likewise reports more than 1,000 purchases of the Olcorife Products in a single month and 2,897 customer ratings, and its purchasers describe it in safety terms: one titled a review "Perfect for baby proofing!", and another wrote, "I no longer have to worry about a fire happening." **Ex. C** at 1, 4. Other reviews of the Olcorife Products in Ex. C show further deception of the product being safe: Jennifer Talik wrote "Now, I have a huge fear of fire, so I haven't dared to plug anything in back there for fear of something sparking or overheating. This was exactly what I was looking for!" Working Momma wrote "My concern about fire safety was significant, and I appreciate that I can still use this outlet . . . ." Robert F. wrote "Great outlet covers to go near a crib. Gives me peace of mind knowing that my baby is not able to grab the cords or have access to the outlets from his crib. . . ." PK wrote "I had wanted to hand curtains. . . they would fall in front of an outlet. . . that is not comfortable for me with a possible fire risk. This was a fantastic solution!" Joann Heyder wrote "Exactly what I needed for an outlet behind the bed. I no longer have to worry about a fire happening." Jven wrote "Perfect for toddler room." Lauren P wrote "Perfect for baby proofing! My baby's crib is right next to an outlet . . . exposing the outlet so our child could reach it. . . This is the perfect solution." Ashes wrote "Perfect for toddler bedrooms! Its perfect for kids' rooms. My son would always play with the plugs in the outlet but now he can't. . . ." Furthermore, many consumers were deceived into purchasing the Olcarife product believing

that it was safe, and they discovered after use that it was not safe: bwc wrote "Smoky smell and potential hazard. . . But I realized someone else that gave this a one start also had the same issue of popping noise and smoky smell which might cause spark or potential fire hazard. DO NOT BUY THIS since there is 2 products that have the similar smoking and popping noise issue. . what is the chances of that. . it does not pass the manufacturing six-sigma level." Ram wrote "Kinda scary. . . gets too hot sometimes. fear it might catch fire. Won't be using long term." Andrew R wrote "Do not buy fire hazard. . . Was charging something usb. Got so hot almost caught on fire. Extremely unsafe product." Vanessa wrote "It almost cause a FIRE!. . . Yep, it almost caused a fire. I heard crackling, popping noise and traced it to the extension cord. . . sparks were coming out of it, and it smelled like chemicals and smoke. . . I'd call this cord extremely unsafe." JenLParker1984 wrote "Fire hazard. . . After plugging in, it became very hot and smelled plasticky. . . just phone chargers. . . The hear emanated from the device itself, not the charger and was hottest around the device's usb output." Emily Gallagher wrote "Ours started making a clicking sound after 1 month of use . . .Either way we unplugged it and threw it away. . . didn't want something to spark in there and catch fire."

74. Safety certification is also material to the marketplace itself. Amazon requires sellers of electrical and electronic products to provide proof that their items comply with applicable UL (Underwriters Laboratories) standards or equivalent Nationally Recognized Testing Laboratory (NRTL) standards.

75. The "Amazon's Choice" designation magnifies the deception. *See* Ex. C. A shopper who sees Amazon's own designation beside Olcorife's representation that the product "conforms to" UL standards has every reason to believe the product has been vetted for safety. It has not been. The designation elevates the Olcorife Power Strip above competing products—including Socket

Solutions' compliant Sleek Socket—and steers to it the very consumers most inclined to trust it. That result cannot be reconciled with Amazon's own requirement that sellers of electrical products provide proof of compliance with applicable UL or equivalent NRTL standards. *See* Paragraph 74.

**H. Interstate Commerce and Injury to Socket Solutions**

76. Each Accused Product is manufactured in China, imported into the United States, and advertised and sold to consumers throughout the United States through Amazon.com, including to consumers in Texas. *See* Ex. D ("Made in China"). The Accused Products and Defendants' advertising travel in interstate commerce.

77. Socket Solutions competes directly with Import Global and with Olcorife. Consumers who are deceived into buying either Accused Product withhold that trade from Socket Solutions. Each Defendant's misrepresentations thus cause Socket Solutions to lose sales it would otherwise make.

78. Defendants' false advertising also gives each of them an unfair price advantage. By using a lighter-gauge cord than UL 817 permits for its outlet configuration, omitting required markings and warnings, and forgoing certification, each Defendant avoids costs that Socket Solutions bears. Each then markets its product as safe—Import Global as a "SAFETY" product suitable for "baby proofing," and Olcorife as a product that "conforms to" UL standards—so that consumers believe they are receiving a safe product at a lower price.

79. Socket Solutions has suffered and continues to suffer injury to its commercial interests in sales and reputation, including lost sales, lost market share, lost and/or lower Amazon rankings, and price erosion.

80. Each Defendant's conduct is continuing. Unless enjoined, it will continue to cause Socket Solutions harm that money damages cannot fully measure or repair, including lost customer

relationships and goodwill.

81. An injunction also serves the public interest. Each day the advertising continues, consumers install in their homes—behind furniture and within reach of children and pets—products that present a risk of fire and death by electrical shock, in reliance on Import Global's assurance that the Neat Socket is a "SAFETY" product and on Olcorife's assurance that its product "conforms to" UL safety standards.

**I. Defendants Act Willfully**

82. Import Global knows the construction of its own products, including the gauge of their cords and the number of outlets and charging ports they serve, and knows what safety certifications it does and does not hold. Its own advertising describes ordinary plugs and cords as "dangerous" and it understands the electrical hazards its safety claims address.

83. Socket Solutions has repeatedly notified Amazon that the Neat Socket does not conform to UL 817. Import Global has nonetheless continued to make the statements described above.

84. Olcorife likewise knows the construction of its own product, including the gauge of its cord and the number of outlets and charging ports it serves, and knows what safety certifications it does and does not hold. It nonetheless chose to print on every package and leaflet a representation that the product "conforms to" UL standards, while affixing no certification mark of any testing laboratory and omitting the warning tag UL 817 requires. Olcorife likewise knows whether its product contains surge-suppression components and whether any laboratory has tested it under UL 1449. It nonetheless advertises "Surge Protection: 2000 Joules" while claiming conformance only to UL 1363.

**J. Import Global Falsely Designates Its Products as Originating From Socket Solutions**

85. Socket Solutions has used the Sleek Socket brand in commerce in connection with its outlet-concealer products since the commencement of its sales alleged above. It owns the goodwill associated with its branding and with the distinctive, nonfunctional combinations of packaging and promotional presentation identified in this section. Socket Solutions has not licensed Import Global to use that presentation or authorized Neat Socket products as Sleek Socket products.

86. The packaging trade dress asserted here consists of the identified combination and arrangement of features, rather than a claim to the color blue, the word "socket," an outlet illustration, or a functional product configuration standing alone. The prior and current front-panel examples are shown in **Ex. E.** On the front, the combination includes a predominantly white field; an oversized, thin-stroke, lowercase first brand word above smaller widely spaced uppercase "SOCKET"; blue horizontal bands; and a product depiction and paired "Before" and "After" panels positioned beneath that branding.

87. On the blue back panel, the asserted combination includes white text; the thin-stroke, two-line brand treatment in the upper left; electrical ratings in the upper right; a compatibility heading and stacked outlet-size descriptions below; a top-receptacle installation instruction above an outlet-and-cover illustration on the left and a benefit list on the right; and a lower row of no-tools, outlet-compatibility, and space-saving pictograms. *See* **Ex. E**.

88. The product-insert presentation includes the particular blue-and-white composition of the insert affixed to the outlet plug, with the product description and installation/compatibility text, brand treatment, outlet-and-cover illustration, warning block, and rating/manufacturer information arranged around the projecting plug blades. Socket Solutions claims the source-

identifying overall arrangement, not exclusive rights to required warnings, ratings, dimensions, certification marks, or instructions as such. *See* **Ex. E**.

89. The Amazon promotional seller pages include coordinated white backgrounds, oversized black and blue headings, and corresponding paired photographs showing exposed plugs or cords beside an outlet concealer in use. Socket Solutions alleges that Import Global adopted a confusingly similar overall presentation in combination with the packaging and brand treatment. Import Global also copied Plaintiff's content and wording on its Sleek Socket Amazon seller page, which was recently reformatted and rewritten in the past two months. Import Global copied the content and wording with days of the posting of the new Sleek Socket content. See **Ex. E**.

90. These graphic arrangements are not necessary to the electrical operation, safety, cost, or quality of an outlet concealer. Competing sellers can communicate dimensions, installation instructions, warnings, and benefits using materially different designs.

91. The identified packaging combinations are distinctive as a whole and identify Socket Solutions as the source of Sleek Socket goods. In the alternative, through consistent use, promotion, sales, and consumer exposure, the identified combinations acquired secondary meaning before Import Global's challenged adoption. Socket Solutions will establish the chronology and extent of use for each version through its records, including the first-use dates and promotion and sales records for that version.

92. The supplied physical photographs show that Import Global adopted a blue back panel with its own thin-stroke "neat" above widely spaced "SOCKET," ratings in the upper right, compatibility text, a top-receptacle instruction, a left-hand installation illustration, right-hand benefit statements, and bottom pictograms corresponding to Socket Solutions' arrangement. The plug inserts likewise use corresponding blue-and-white arrangements. Current Amazon images

also show a blue-and-white Neat Socket carton with large two-line branding and paired before/after panels. **Exhibit E** supplies side-by-side comparisons and identifies the similarities.

93. The competing goods perform the same general outlet-concealing function, are offered through the same Amazon marketplace to overlapping household purchasers, and are advertised at competing prices. In that context, the combined similarities are likely to cause purchasers to believe that Neat Socket is a Sleek Socket line extension, affiliated brand, authorized product, or product approved by Socket Solutions, notwithstanding the substitution of "neat" for "sleek." Socket Solutions does not allege that the two word marks are identical but that they are confusing as to the origin to customers, when considered with all the evidence as a whole.

94. Socket Solutions has developed secondary considerations in this field of outlet covers. The Sleek Socket product has been selling sine 2018 on Amazon.com and has a 4.5 star out of 5 rating with 32,185 reviews. Socket Solutions created this product and owns five patents thereto. No competitors were making knock-off products until 2023, thus Socket Solutions had five years of sales as the only provider of this type of product. Sleek Socket is highly commercially successful as product, selling millions of dollars of product since its introduction. Independent, third party publications have written favorable articles about Sleek Socket, such as https://www.cubbyathome.com/sleek-socket-electrical-outlet-cover-review-2-2-80048775, titled "This Ingenious Product Keeps Plus and Cords Out of Sight (And Has Over 22,000 5-Start Reviews", Pub. April 3, 2026, and https://www.apartmenttherapy.com/sleek-socket-outlet-concealer-amazon-october-2025-37514716, titled This "Brilliant" Amazon Find Tidies Up Cluttered Electrical Outlets (and Has 47,000 5-Star Reviews!), publ. Oct. 25, 2025. Socket Solutions has filed multiple patent infringement lawsuits against knock-off products, such as suing Target Corp. in 2023, as reported in Bloomberg Law. Sleek Socket sells on Homedepot.com, for

which any electrical product must be analyzed by Home Depot internal buyers and meet all UL standards.

95. Upon information and belief, the extent and repeated nature of the adoption reflect awareness of Socket Solutions' presentation and an intent to benefit from its goodwill. Import Global's separate name, contact information, yellow banner, different pictures, and USB features do not eliminate the alleged confusion from the presentation as a whole. Socket Solutions seeks relief for source or affiliation confusion and resulting diversion of trade, not simply for copying functional features or descriptive ideas.

96. Import Global's challenged presentation has caused and threatens to continue causing diverted sales, loss of control over Socket Solutions' reputation and goodwill, and consumer confusion. The unfair association of products outside Socket Solutions' control with its business causes injury that is difficult to quantify fully.

97. Plaintiff has suffered, and will suffer in the future, immediate and irreparable harm for which there is no adequate remedy at law unless the requested injunctive relief is granted.

**K. The Doe Defendants' False Safety Complaints Against the Sleek Socket**

98. Socket Solutions sells the Sleek Socket products on Amazon.com under the Amazon Services Business Solutions Agreement, the contract that governs third-party sellers on Amazon. Socket Solutions also sells Sleek Socket products to Canadian consumers through Amazon.ca. Amazon.com is a principal channel through which Socket Solutions reaches its customers.

99. The Sleek Socket products are certified by Intertek, a Nationally Recognized Testing Laboratory, as conforming to applicable UL standards (U.S.) and CSA standards (Canada). Intertek first certified them in 2018 and has conducted random, unscheduled inspections of their

production facility every quarter of every year since. Socket Solutions has provided the Intertek certifications to Amazon, and they are on file with Amazon.

100. Despite Socket Solutions' multiple transmissions throughout the year to Amazon of Intertek's certifications of the Sleek Socket products under applicable UL and CSA standards for the purpose of resolving the violations arising from complaints from bad faith actors as described herein, and so that Amazon could reinstate the Sleek Socket listings removed by Amazon on account of the complaints by bad faith actors described herein, Socket Solutions continued to receive frequent notices of illegitimate complaints from bad faith actors that resulted in further notices of violations of the Sleek Socket products and actions taken by Amazon to remove various Sleek Socket listings, some of which as of the date of this complaint remain suspended by Amazon on account of complaints described herein.

101. Socket Solutions has never received a complaint that any Sleek Socket product caused a fire or an electrocution—not from any customer directly, and not through its products-liability insurance carrier.

102. Despite that record, Amazon has repeatedly notified Socket Solutions that it has received reports that Sleek Socket products are unsafe, and has threatened to deactivate the affected listings and has taken action against some of the Sleek Socket listings in both the U.S. (Amazon.com) and Canada (Amazon.ca).

103. Notably, the reported hazards in the complaints made by bad faith actors do not fit the products, as Amazon's violation notices from "customer reports" cite a surge-protection hazard in connection with Sleek Socket products that do not incorporate surge protective devices (SPDs), and cite faulty batteries, Wi-Fi, and Bluetooth in connection with Sleek Socket products that contain no battery and have no Wi-Fi or Bluetooth features. A consumer who had actually

experienced a hazard would describe the product he owned. A person who had never owned the product would not know what it contains, and would instead recite the hazard categories of Amazon's safety policy—which is what the complaints did.

104. Amazon treats each such complaint as a safety violation, issues a policy-violation notice, and threatens to delist the affected Sleek Socket listing. Amazon has carried out those threats: it has delisted Sleek Socket listings on account of the complaints.

105. The complaints are false. No Sleek Socket product has caused a fire or an electrocution. Had any Sleek Socket product caused a fire or electrocution, as the complaints reported, it would have generated at least one insurance claim and likely a recall of affected Sleek Socket products. No such insurance claim was made.

106. The complaints are knowingly false and made in bad faith. Upon information and belief, no Doe Defendant experienced a fire or electrocution involving a Sleek Socket product, and each submitted its complaints knowing they were false, for the purpose of causing Amazon to suspend or delist Sleek Socket listings. The frequency of the complaints—multiple violation notices on the same Sleek Socket ASIN within the same month, their repetition over time and across multiple listings and two national marketplaces, their assertion of the same improbable harm against products Intertek has certified, and the absence of any corresponding customer report or insurance claim support that inference.

107. Upon information and belief, the Doe Defendants are sellers of competing products on Amazon.com, or persons acting on their behalf, who benefit when a certified competitor's listings are removed. Each delisting removes a competing product from shoppers' view and diverts their purchases to other sellers.

108. Amazon's safety-review process is open to abuse by competitors. Upon

information and belief, any person may report a safety concern about a product listing, and the person making the report need not identify a purchase, produce the product, describe a specific incident, or substantiate the report. Amazon's notices confirm that it acts on such reports: Amazon has told Socket Solutions that it is "taking this action because we received customer feedback about potential safety concerns with your product," and, in later notices, that it "detected patterns of safety concerns with your product" that "were identified through customer reports."

109. Once a report is made, the burden shifts entirely to the seller. Amazon's notices give the seller a short deadline to submit safety documentation—including "[t]esting specifically related to the incident in question"—and warn that, if the seller does not, "the impacted listings will be deactivated," "pending customer orders for these products will be cancelled," and Amazon "may automatically dispose of any units of this product that remain in our fulfillment centers, without additional notice to you, at your cost." The person who made the report bears no cost and faces no consequence. A seller whose product has been certified for years must nonetheless stop, document, and appeal each time a report is made, and its listings may be suspended while it does so, and in many notices of violations, because the bad faith complaints described issues unrelated to the Sleek Socket products, Amazon required proof of certification of factually irrelevant UL standards, putting Socket Solutions in an impossible position of producing certifications that no Nationally Recognized Testing Lab could provide to Socket Solutions.

110. Those features make Amazon's safety and compliance controls an effective weapon for a competitor willing to misuse them. Upon information and belief, a competing seller can manufacture the "patterns of safety concerns" that trigger Amazon's enforcement by submitting multiple reports against the same listing, and by framing each report in the hazard categories that Amazon's safety policy recognizes rather than in the facts of any actual incident. The complaints

against the Sleek Socket bear each of those marks: they recur against the same ASINs within short periods of one another; they continued after Socket Solutions documented, again and again, that the products are certified; and they recite hazards—surge protection, batteries, Wi-Fi, and Bluetooth—drawn from Amazon's safety categories rather than from the products themselves, and recite electrocutions of customers (i.e., deaths).

111. Only a competitor gains from that conduct. The Sleek Socket is a leading product in its category on Amazon.com. In 2016, it created the subcategory of its patented electrical devices – the Sleek Socket products – only to see a bombardment of patent infringing China based knockoff sellers competing with Socket Solutions on Amazon. Whereas Socket Solutions enjoyed 100% market share in the new niche of electrical products it invented, because of the patent infringing China based knockoffs that flood Amazon.com and because of the bad faith complaints described herein, Socket Solutions' patented original product is now something like a generic product on Amazon with predatory pricing by China based companies, causing Socket Solutions irreparable harm.

112. At one time, the Sleek Socket product listings ranked as the #1 Best Seller in Amazon's Electrical Multi-Outlets category and carry an average rating of 4.7 out of 5 stars across more than 61,000 customer ratings, and shortly after those milestones, the patent infringing China based knockoff sellers flooded the Amazon marketplace and then the serial, unending bad faith complaints ensued. Each day a Sleek Socket listing is suspended, shoppers who search for an outlet concealer see, and buy, competing products instead—including uncertified products that are dangerously unsafe and for which safety certification is impossible under the current design, such as the Accused Products described in Sections IV.B through IV.I. A consumer gains nothing from the removal of a certified product from the marketplace; a competitor gains the sales the certified

product would have made.

113. Upon information and belief, the John Doe Defendants include sellers or indivuals related to sellers of competing outlet-concealer and power-strip products on Amazon.com and Amazon.ca, or persons acting at their direction, who submitted the complaints to manipulate Amazon's safety and compliance controls and to use those controls to suspend Sleek Socket listings and divert Sleek Socket's sales to themselves. Upon information and belief, the Doe Defendants coordinated their complaints, or a single actor submitted them through multiple accounts, so that Amazon would treat them as independent "customer reports" and as a "pattern[] of safety concerns."

114. Socket Solutions cannot identify the Doe Defendants without early discovery. Amazon's notices do not identify the complainants; they refer only to "customer feedback" and "customer reports." Upon information and belief, Amazon's records identify the account, name, e-mail address, and Internet Protocol address associated with each complaint. Socket Solutions will seek leave under Federal Rule of Civil Procedure 26(d)(1) to serve preliminary discovery upon Amazon.com, so that the Doe Defendants can be identified and named.

115. The false complaints have caused Socket Solutions material financial harm, including lost sales while its listings were delisted and the cost of responding to Amazon's notices and seeking reinstatement. Each notice also imposed a deadline to submit safety documentation, under threat of deactivation, cancellation of pending customer orders, and disposal of Socket Solutions' inventory in Amazon's fulfillment centers. The complaints continue, and so does the harm.

116. The Doe Defendants acted with malice. Each knew its complaints were false, or made them with reckless disregard for their truth, and intended to injure Socket Solutions'

business.

## V. CAUSES OF ACTION

## COUNT I

### False Advertising Under Section 43(a)(1)(B) of the Lanham Act, 15 U.S.C. § 1125(a)(1)(B) (Against Import Global)

117. Socket Solutions incorporates the preceding paragraphs by reference.

118. Section 43(a)(1)(B) of the Lanham Act makes liable any person who, in connection with goods, uses in commerce any "false or misleading description of fact, or false or misleading representation of fact, which . . . in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods." 15 U.S.C. § 1125(a)(1)(B).

119. Import Global made false and misleading statements of fact about the Neat Socket, as alleged above, in commercial advertising and promotion.

120. Those statements misrepresent the nature, characteristics, and qualities of the Neat Socket, including its safety and its suitability for use around children and pets.

121. Those statements deceived, or have the tendency to deceive, a substantial segment of their intended audience.

122. The deception is material because it is likely to influence consumers' purchasing decisions.

123. Import Global caused the Neat Socket and their advertising to enter interstate commerce.

124. Socket Solutions has been injured, and is likely to be further injured, as a direct result of those statements. Import Global's deception of consumers causes them to withhold trade from Socket Solutions, injuring Socket Solutions' commercial interests in sales and reputation.

125. Import Global's violation is willful.

126. Socket Solutions is entitled to injunctive relief against Import Global under 15 U.S.C. § 1116(a), and to recover Import Global's profits, its damages, and the costs of the action under 15 U.S.C. § 1117(a), together with enhanced damages and reasonable attorney's fees as that section permits.

**COUNT II**

**False Advertising Under Section 43(a)(1)(B) of the Lanham Act, 15 U.S.C. § 1125(a)(1)(B) (Against Olcorife)**

127. Socket Solutions incorporates the preceding paragraphs by reference.

128. Olcorife made false and misleading statements of fact about the Olcorife Products, as alleged above, in commercial advertising and promotion, in violation of 15 U.S.C. § 1125(a)(1)(B).

129. Those statements misrepresent the nature, characteristics, and qualities of the Olcorife Products, including its safety and its conformance to published safety standards.

130. Those statements deceived, or have the tendency to deceive, a substantial segment of their intended audience.

131. The deception is material because it is likely to influence consumers' purchasing decisions.

132. Olcorife caused the Olcorife Products and their advertising to enter interstate commerce.

133. Socket Solutions has been injured, and is likely to be further injured, as a direct result of those statements. Olcorife's deception of consumers causes them to withhold trade from Socket Solutions, injuring Socket Solutions' commercial interests in sales and reputation.

134. Olcorife's violation is willful.

135. Socket Solutions is entitled to injunctive relief against Olcorife under 15 U.S.C. § 1116(a), and to recover Olcorife's profits, its damages, and the costs of the action under 15 U.S.C. § 1117(a), together with enhanced damages and reasonable attorney's fees as that section permits.

**COUNT III**

**Commercial Disparagement Under Section 43(a)(1)(B) of the Lanham Act, 15 U.S.C. § 1125(a)(1)(B) (Against John Does 1–20)**

136. Socket Solutions incorporates the preceding paragraphs by reference.

137. Section 43(a)(1)(B) of the Lanham Act reaches false or misleading representations of fact that, in commercial advertising or promotion, misrepresent the nature, characteristics, or qualities of "another person's goods." 15 U.S.C. § 1125(a)(1)(B).

138. The Doe Defendants made false and misleading statements of fact about Socket Solutions' goods: upon information and belief, that Sleek Socket products are unsafe and cause fires and electrocution—reports Amazon summarized as causing "fires and electrocution." Those statements misrepresent the nature, characteristics, and qualities of the Sleek Socket products, including their safety.

139. Upon information and belief, the Doe Defendants are in commercial competition with Socket Solutions and made the statements for the purpose of influencing consumers to buy their competing goods instead of Socket Solutions' goods, by causing Amazon to remove Sleek Socket listings from the marketplace in which those consumers shop.

140. The statements were commercial speech and were disseminated sufficiently to the relevant purchasing public to constitute promotion within the industry. They were directed to Amazon, which controls whether and how Sleek Socket products are presented to the purchasing public on Amazon.com, and they were made repeatedly, across multiple listings on Amazon.com and Amazon.ca, for the purpose and with the effect of removing Sleek Socket products from that

public's view. Upon information and belief, the Doe Defendants used Amazon's safety-reporting process as a means of promoting their own competing products: by removing the leading certified competitor from the listings presented to purchasers, they placed their own products before those purchasers in its stead.

141. The statements deceived Amazon, which acted on them by issuing policy-violation notices and delisting Sleek Socket listings. The deception was material: it determined whether consumers could buy Sleek Socket products on Amazon.com at all.

142. The Doe Defendants caused their statements to enter interstate commerce.

143. Socket Solutions has been injured, and is likely to be further injured, as a direct result of the statements, including through lost sales and injury to its reputation.

144. The Doe Defendants' violation is willful.

145. Socket Solutions is entitled to injunctive relief against the Doe Defendants under 15 U.S.C. § 1116(a), and to recover their profits, its damages, and the costs of the action under 15 U.S.C. § 1117(a), together with enhanced damages and reasonable attorney's fees as that section permits.

**COUNT IV**

**Business Disparagement Under Texas Law (Against John Does 1–20)**

146. Socket Solutions incorporates the preceding paragraphs by reference.

147. The Doe Defendants published false and disparaging statements about Socket Solutions' economic interests: upon information and belief, that Sleek Socket products are unsafe and cause fires and electrocution—reports Amazon summarized as causing "fires and electrocution." They published those statements to Amazon.

148. The Doe Defendants acted with malice. They knew the statements were false, or acted with reckless disregard for their truth, and intended to interfere with Socket Solutions'

economic interests.

149. The statements were not privileged. A knowingly false report of a safety incident that did not occur serves no legitimate interest. Any privilege that protects a good-faith report of a product-safety concern does not extend to a report that a competitor knows to be false and makes to remove a rival from the marketplace.

150. The statements caused Socket Solutions special damages, including the loss of sales while Amazon delisted Sleek Socket listings in response to the complaints and the cost of responding to the resulting notices.

151. Socket Solutions seeks actual damages and, because the Doe Defendants acted with malice, exemplary damages as permitted by Texas law.

**COUNT V**

**Defamation Under Texas Law (Against John Does 1–20)**

152. Socket Solutions incorporates the preceding paragraphs by reference.

153. The Doe Defendants published to Amazon false statements of fact concerning Socket Solutions: upon information and belief, that the products it designs and sells are unsafe and cause fires and electrocution—reports Amazon summarized as causing "fires and electrocution."

154. The statements are defamatory. They charge Socket Solutions with selling products that set fires and electrocute their users, injuring Socket Solutions' reputation in its business and exposing it to loss of business.

155. The Doe Defendants published the statements knowing they were false or with reckless disregard for their truth, and at a minimum without reasonable care as to their truth.

156. The statements caused Socket Solutions damages, including lost sales and injury to its business reputation.

157. Socket Solutions will make a timely request for a correction, clarification, or

retraction to each Doe Defendant once that defendant is identified. See Tex. Civ. Prac. & Rem. Code § 73.055(a)–(b).

158. Socket Solutions seeks actual damages and, to the extent permitted by Tex. Civ. Prac. & Rem. Code § 73.055(c), exemplary damages.

**COUNT VI**

**Tortious Interference With Existing Contract Under Texas Law (Against John Does 1–20)**

159. Socket Solutions incorporates the preceding paragraphs by reference.

160. Socket Solutions is a party to an existing contract with Amazon—the Amazon Services Business Solutions Agreement—under which it lists and sells Sleek Socket products on Amazon.com.

161. The Doe Defendants knew that Socket Solutions sells on Amazon.com under such a contract, and they willfully and intentionally interfered with it by submitting false safety complaints designed to cause Amazon to suspend and remove Socket Solutions' listings. The Doe Defendants knew that Amazon responds to safety reports by threatening to suspend, and suspending, the affected listings until the seller satisfies Amazon's documentation demands, and they submitted their reports to bring about that result.

162. The interference proximately caused Socket Solutions injury: because of the complaints, Amazon issued policy-violation notices, threatened to delist, and delisted Sleek Socket listings.

163. Socket Solutions suffered actual damages, including lost sales and profits.

164. Socket Solutions seeks actual damages and exemplary damages as permitted by Texas law.

## COUNT VII

### Tortious Interference With Prospective Business Relations Under Texas Law (Against John Does 1–20)

165. Socket Solutions incorporates the preceding paragraphs by reference.

166. There was a reasonable probability that Socket Solutions would have made sales to consumers on Amazon.com who were prevented from buying Sleek Socket products while its listings were suspended or removed because of the Doe Defendants' complaints.

167. The Doe Defendants' conduct was independently tortious and unlawful. It constitutes business disparagement and defamation, as alleged in Counts IV and V, and violates 15 U.S.C. § 1125(a), as alleged in Count III.

168. The Doe Defendants acted with the conscious desire to prevent those sales, or knew that their interference was certain or substantially certain to prevent them.

169. The Doe Defendants' conduct proximately caused Socket Solutions actual damages, including lost sales and profits.

170. Socket Solutions seeks actual damages and exemplary damages as permitted by Texas law.

## COUNT VIII

### Unfair Competition Under Texas Common Law (Against All Defendants)

171. Socket Solutions incorporates the preceding paragraphs by reference.

172. Unfair competition under Texas law "is the umbrella for all statutory and nonstatutory causes of action arising out of business conduct which is contrary to honest practice in industrial or commercial matters." *Taylor Publ'g Co. v. Jostens, Inc.*, 216 F.3d 465, 486 (5th Cir. 2000) (quotation omitted). The tort requires "an illegal act by the defendant which interfered with the plaintiff's ability to conduct its business"; the illegal act "must at least be an independent

tort." *Id.*

173. The Seller Defendants. Import Global and Olcorife engaged in business conduct contrary to honest practice in commercial matters. Each sells, as safe or as conforming to UL safety standards, an electrical product that violates UL 817 by design, bears no certification mark of any Nationally Recognized Testing Laboratory, and cannot be certified as designed, while Socket Solutions bears the cost of building, certifying, and maintaining certification of a compliant product. Each Seller Defendant's false advertising violates 15 U.S.C. § 1125(a), as alleged in Counts I and II, and that violation is an illegal act independent of this Count.

174. The Seller Defendants' illegal conduct interfered with Socket Solutions' ability to conduct its business. It diverted sales from Socket Solutions to the Accused Products on the same marketplace, and it forced Socket Solutions to compete on price against products whose sellers avoided the cost of compliance that Socket Solutions bears.

175. The Doe Defendants. The Doe Defendants engaged in business conduct contrary to honest practice in commercial matters by submitting knowingly false safety complaints to Amazon to manipulate and abuse Amazon's safety and compliance controls and to remove a certified competitor's listings from the marketplace. That conduct is illegal and independently tortious: it violates 15 U.S.C. § 1125(a), as alleged in Count III, and constitutes business disparagement, defamation, and tortious interference with an existing contract, as alleged in Counts IV through VI.

176. The Doe Defendants' illegal conduct interfered with Socket Solutions' ability to conduct its business. It caused Amazon to issue policy-violation notices against, threaten to deactivate, and suspend and remove Sleek Socket listings; it cost Socket Solutions the sales those listings would have made; and it compelled Socket Solutions to divert resources to responding to

the notices and seeking reinstatement.

177. Each Defendant's unfair competition proximately caused Socket Solutions actual damages, including lost sales and profits.

178. Each Defendant acted knowingly and with malice. Socket Solutions seeks actual damages and, upon proof by clear and convincing evidence, exemplary damages under Tex. Civ. Prac. & Rem. Code § 41.003(a).

**COUNT IX**
**False Designation of Origin and Unfair Competition Under Section 43(a)(1)(A) of the Lanham Act, 15 U.S.C. § 1125(a)(1)(A)**
**(Against Import Global Only)**

179. Socket Solutions incorporates the preceding paragraphs by reference.

180. Socket Solutions incorporates the preceding factual allegations concerning its rights, Import Global's conduct, interstate commerce, and resulting injury.

181. Socket Solutions owns protectable rights in the distinctive, nonfunctional source-identifying combinations described herein and shown in Exhibit E. The packaging and Amazon seller pages are inherently distinctive as a whole or, alternatively, acquired distinctiveness through secondary meaning before the challenged use.

182. Without authorization, Import Global used in commerce on or in connection with competing goods the confusingly similar names, symbols, graphic arrangements, content, and presentation alleged above. Its acts are likely to cause confusion, mistake, or deception as to the origin, affiliation, connection, association, sponsorship, or approval of Neat Socket products and commercial activities by Socket Solutions.

183. The relevant circumstances include the strength and source-identifying use of Socket Solutions' presentation; the similarities and differences in the parties' overall presentations; the closely competing products; overlapping retail channels, customers, and advertising media; the

ordinary conditions of purchase; and Import Global's alleged intentional adoption. The claim concerns consumers' understanding of commercial source or affiliation.

184. Import Global's acts have proximately caused and threaten further injury to Socket Solutions' sales, goodwill, reputation, and control over its commercial identity. Upon information and belief, the acts were undertaken willfully and with the intent to cause confusion or trade on Socket Solutions' goodwill.

185. Socket Solutions seeks monetary damages and additionally seeks preliminary and permanent injunctive relief under 15 U.S.C. § 1116, appropriate relief under § 1118, and damages, Import Global's attributable profits, costs, and exceptional-case attorney's fees under § 1117(a).

186. Upon information and belief, the Seller Defendants' payment and financial accounts are being used by the Seller Defendants to accept, receive, and deposit profits from the Seller Defendants' wrongful activities connected to their Seller IDs and any other alias online commerce stores, seller identification names, domain names, or websites being used or controlled by them. Upon information and belief, the Seller Defendants are likely to transfer or hide their assets to avoid payment of any monetary judgment awarded to Plaintiff. Given the likelihood that the Seller Defendants will simply transfer money from their accounts and open new product listings to continue selling the Accused Products, Plaintiff has no adequate remedy at law. Plaintiff is suffering irreparable injury and has suffered substantial damages as a result of Seller Defendants' wrongful acts described herein.

## VII. JURY DEMAND

187. Under Federal Rule of Civil Procedure 38, Socket Solutions demands a trial by jury on all issues so triable.

## VIII. PRAYER FOR RELIEF

188. Socket Solutions respectfully requests that the Court enter judgment in its favor and against each Defendant, severally, for that Defendant's own conduct, and award the following relief:

(a) a temporary restraining order and preliminary and permanent injunctions under 15 U.S.C. § 1116(a) and Federal Rule of Civil Procedure 65 prohibiting each Defendant, and all persons acting in concert or participation with it, from selling any product represented in advertising, promotion, packaging, labeling, or product listings that its Accused Product, or any other cord set that does not conform to UL 817, is a "safety" product, "safely" conceals outlets, is suitable for "baby proofing," is "child and pet friendly," "conforms to" or complies with any UL standard, provides "surge protection," or is otherwise safe for its intended use;

(b) an order setting Socket Solutions' application for a preliminary injunction for hearing at the earliest practicable time;

(c) an order requiring Defendants to remove or correct the false and misleading statements from every product listing, package, label, insert, and advertisement within a time the Court sets, and to file a sworn report of compliance;

(d) an order requiring Defendants to disseminate corrective advertising in a form and to an extent the Court finds appropriate;

(e) each Defendant's profits under 15 U.S.C. § 1117(a), in an amount to be proven at trial and enhanced as that section permits;

(f) Socket Solutions' actual damages, in an amount to be proven at trial, enhanced up to three times as 15 U.S.C. § 1117(a) permits;

(g) as to the Doe Defendants, an order under Federal Rule of Civil Procedure 26(d)(1) granting Socket Solutions leave, before the Rule 26(f) conference, to serve on Amazon.com, Inc. early discovery sufficient to identify each person or account, and their email address and contact information, that submitted to Amazon through Amazon.com or Amazon.ca a report of safety concerns about a Sleek Socket product, including each report underlying the Amazon violation notices;

(h) as to the Doe Defendants, a permanent injunction prohibiting each of them, and all persons acting in concert or participation with them, from repeating to Amazon or any other marketplace any statement found false in this action concerning the safety of Sleek Socket products;

(i) as to the Doe Defendants, actual damages, including special damages; exemplary damages as permitted by Texas law; and the profits, damages, and enhanced damages permitted by 15 U.S.C. § 1117(a);

(j) on Count VIII, Socket Solutions' actual damages against each Defendant and, upon the required proof, exemplary damages under Tex. Civ. Prac. & Rem. Code § 41.003(a);

(k) reasonable attorney's fees under 15 U.S.C. § 1117(a) because this is an exceptional case;

(l) the costs of this action;

(m) pre-judgment and post-judgment interest at the maximum rates allowed by

law; and

(n) all other relief to which Socket Solutions is entitled.

Dated: November 3, 2026

Respectfully submitted,

DNL ZITO

_/s/__Joseph J. Zito
Joseph J. Zito
jzito@dnlzito.com | 202-466-3500
Kendal M. Sheets (pro hac vice to be filed)
ksheets@dnlzito.com | 703-489-8937
1250 Connecticut Avenue, NW, Suite 700
Washington, DC 20036

ATTORNEYS FOR PLAINTIFF
SOCKET SOLUTIONS, LLC

## VERIFICATION

I, Michael Insalaco, am the Founder and Managing Member of Plaintiff Socket Solutions, LLC. I have read the foregoing Verified Original Complaint. The factual allegations in it are true and correct based on my personal knowledge and on the business records of Socket Solutions, LLC, except for allegations stated on information and belief, which I believe to be true.

I declare under penalty of perjury that the foregoing is true and correct. Executed on November 2, 2026.

Michael Insalaco